1

2

3

4

5

6

7

8

9

10

11

12

13

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RAJ AND COMPANY,

Plaintiff,

v.

U.S. CITIZENSHIP AND IMMIGRATION
SERVICES, and U.S. DEPARTMENT OF
HOMELAND SECURITY,

Defendants.

Case No. C14-123RSM

ORDER ON CROSS-MOTIONS FOR
SUMMARY JUDGMENT

14

15

16

17

18

19

20

21

22

23

24

25

26

This matter comes before the Court pursuant to Motion for Summary Judgment by

Plaintiff, Raj and Company ("Raj") (Dkt. # 16), and Cross-Motion for Summary Judgment by

Defendants, United States Citizenship and Immigration Services ("USCIS") and the United

States Department of Homeland Security (Dkt. # 19). Plaintiff moves the Court to reverse

USCIS's denial of Plaintiff's petition for an H-1B "specialty occupation" visa. Neither party

has requested oral argument, and the Court deems it unnecessary. Having considered the

parties' memoranda and the underlying administrative record, and for the reasons stated

herein, the Court grants Plaintiff's Motion for Summary Judgment and denies Defendants'

Cross-Motion for Summary Judgment.

**BACKGROUND**

Plaintiff Raj & Company is a ten-person company based in Yakima, Washington that

operates gas stations, convenience stores, and hotels. Dkt. # 14, Certified Administrative

Record ("AR") at 218. On October 13, 2011, Raj filed a Form I-129 Petition for

Nonimmigrant Worker with USCIS seeking to classify Rashna R. Kajal, a citizen of the Republic of Fiji, as a nonimmigrant special occupation worker under section 101(a)(15)(H)(i)(b) of the Immigration and Nationality Act ("INA"). AR at 213 *et seq.* Raj sought to employ Ms. Kajal as "Marketing Analyst & Specialist" out of its Yakima office for a three-year period in order to assist the company in assessing market and geographical opportunities for expanding its hotel and convenience store business in the region and throughout the state. *Id.* at 23, 217-18. Ms. Kajal has earned a Bachelor of Science degree and certificate in Business Management and Marketing from Brigham Young University in Hawaii and provided copies of her diploma and transcripts to USCIS. *Id.* at 269-70.

On February 2, 2012, USCIS issued a Request for Evidence, asking Raj to submit additional evidence pertaining to the subject job offer, including evidence of the need for the proffered position, information regarding Raj's business operations, and any documentation about industry practices or Raj's own past employment practices related to employment of market research analysts. AR at 12-13. Plaintiff responded with substantial amounts of evidence on April 27, 2012. *Id.* at 14 *et seq.* USCIS nonetheless denied the H-1B visa application on October 27, 2012 on the sole grounds that Raj had failed to demonstrate that the proffered position qualifies as a specialty occupation within the meaning of applicable regulations. *Id.* at 2-9.

As a result, Plaintiff filed the instant Complaint on January 25, 2014. Dkt. # 1 (Compl.). Plaintiff thereby moves the Court to reverse USCIS's decision and order the agency to grant Plaintiff's H1-B Petition, pursuant to section 706 of the Administrative Procedure Act ("APA"), 5 U.S.C § 706. Plaintiff filed the instant Motion for Summary Judgment (Dkt. # 16), and Defendants filed a response and Cross-Motion for Summary Judgment (Dkt. # 19).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

# APPLICABLE LEGAL STANDARDS

## A.  Judicial Review of Administrative Decision

The Administrative Procedure Act authorizes judicial review where a person "suffer[s] legal wrong because of agency action, or [is] adversely affected or aggrieved by agency action within the meaning of the relevant statute." 5 U.S.C. § 702. The reviewing district court is, in turn, empowered to set aside a final agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The standard is "highly deferential, presuming the agency action to be valid." *Kern County Farm Bureau v. Allen*, 450 F.3d 1072, 1076 (9th Cir. 2006). Even so, the reviewing court properly sets aside an agency decision where "there is no evidence to support the decision or if the decision was based on an improper understanding of the law." *Kazarian v. U.S. Citizenship and Immigration Services*, 596 F.3d 1115, 1118 (9th Cir. 2010) (internal citation omitted).

The agency's factual findings are reviewed for substantial evidence and will not be disturbed "unless the evidence presented would *compel* a reasonable finder of fact to reach a contrary result." *Family Inc. v. U.S. Citizenship and Immigration Services*, 469 F.3d 1313, 1315 (9th Cir. 200) (internal citation omitted; emphasis in original). Similarly, the court gives the agency's interpretation of its own regulations "substantial deference" and "controlling weight unless doing so is inconsistent with the regulation or plainly erroneous." *Independent Acceptance Co. v. California*, 204 F.3d 1247, 1251 (9th Cir. 2000). If the agency has erred, the Court must still "evaluate whether such an error was harmless." *Kazarian*, 596 F.3d at 1118.

## B.  Summary Judgment Standard

Courts routinely resolve APA challenges through summary judgment motions. *See Northwest Motorcycle Ass'n v. U.S. Dept. of Agriculture*, 18 F.3d 1468, 1471-72 (9th Cir.

1994); *Caremax Inc. v. Holder*, 2014 WL 1493621, *3 (N.D. Cal. 2014). Summary Judgment is proper where, viewing the evidence and inferences therefrom in favor of the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those that may affect the outcome of the suit under governing law, and an issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Judicial review of an agency action is confined to the administrative record. *National Association of Home Builders v. Norton*, 340 F.3d 835, 841 (9th Cir. 2003). In ruling on a motion for summary judgment, the court does "not weigh the evidence or determine the truth of the matter but only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco*, 41 F.3d 547, 549 (internal citations omitted). The function of the district court on summary judgment is consequently "to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Occidental Engineering Co. v. I.N.S.*, 753 F.2d 766, 769 (9th Cir. 1985).

## ANALYSIS

Plaintiff argues that USCIS abused its discretion in denying Raj's H-1B visa petition. Specifically, Plaintiff contends that USCIS reached a decision not supported by the evidence when it determined that Raj had failed to sustain its burden of proving that the proffered position qualifies as a "specialty occupation." USCIS, by contrast, argues that the agency properly acted within the scope of its discretion when it found that Raj had failed to establish that any of the enumerated criteria for qualification as a "specialty occupation" were met.

I. **Applicable Statutory and Regulatory Framework**

The INA permits qualified nonimmigrant aliens to temporarily perform services in the United States if they are sponsored by an employer in a "specialty occupation." 8 U.S.C. § 1101(a)(15)(H)(i)(b). Before a visa may issue, an employer must obtain certification from the Department of Labor that it has filed a labor condition application in the specific occupational specialty. 8 C.F.R. § 214.2(h)(4)(ii). The employer must then file an H-1B visa petition on behalf of the alien worker, which shows that the proffered position satisfies the statutory and regulatory requirements. 8 U.S.C. § 1184(c). The INA defines a "specialty occupation" as an occupation that requires:

> (A)    Theoretical and practical application of a body of highly specialized knowledge, and
> (B)    Attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States.

8 U.S.C. § 1184(i).

USCIS has also enacted agency regulations fleshing out H1-B requirements. The regulations define "specialty occupation" and provide a non-exhaustive list of fields that may satisfy the definition:

> Specialty occupation means an occupation which requires theoretical and practical application of a body of highly specialized knowledge in fields of human endeavor including, but not limited to, architecture, engineering, mathematics, physical sciences, social sciences, medicine and health, education, business specialties, accounting, law, theology, and the arts, and which requires the attainment of a bachelor's degree or higher in a specific specialty, or its equivalent, as a minimum for entry into the occupation in the United States.

8 C.F.R. § 214.2(h)(4)(ii). USCIS further developed a set of four criteria to determine whether an occupation qualifies as a "specialty occupation," one of which must be satisfied:

> (1)    A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into a particular position;

(2)     The degree requirement is common to the industry in parallel positions among similar organization or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree;

(3)     The employer normally requires a degree or its equivalent for the position; or

(4)     The nature of the specific duties are so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree.

8 C.F.R. § 214.2(h)(4)(iii)(A). The burden of proving that a particular occupation comes within this taxonomy rests with the petitioner. *Royal Siam Corp. v. Chertoff*, 484 F.3d 139, 145 (1st Cir. 2007) (citing 8 U.S.C. § 1361).

Upon establishing that a position is a "specialty occupation," the H-1B visa petitioner must also demonstrate that the alien worker is qualified to work in such a position. *See* 8 U.S.C. § 1184(i)(2); *Caremax*, 2014 WL 1493621, *3. The Regulations require that the beneficiary alien satisfy one of four qualifying criteria: that the alien (1) hold a U.S. bachelor or higher degree required by the specialty occupation from an accredited college or university, (2) hold an equivalent foreign degree, (3) hold an equivalent state license, registration, or certification authorizing her to full practice the specialty occupation, or (4) hold an equivalent combination of education, specialized training, and work experience. 8 C.F.R. § 214(h)(4)(iii)(C).

## II. Application of the Regulatory Criteria

The parties agree that the only issue before the Court is whether Raj's proffered position qualifies as a "specialty occupation" under the statutory and regulatory framework. Dkt. # 16, p. 2; Dkt. # 19, p. 10. The parties also agree that USCIS did not abuse its discretion in determining that, despite the job title of "Marketing Analyst & Specialist" submitted by Raj, the proposed duties are most closely analogous to those of a "Market Research Analyst." AR at 7; Dkt. # 16, p. 2; Dkt. # 19, p. 10. Rather, Raj challenges the USCIS's findings that the

position of "Market Research Analyst" in general, and the position Raj seeks to fill in particular, do not meet the first, second, and fourth criteria enumerated in 8 C.F.R. § 214.2(h)(4)(iii)(A). The Court agrees with Plaintiff that USCIS abused its discretion in determining that a "Market Research Analyst" does not come within the first qualifying criteria and thus reverses USCIS's denial.

As an initial matter, the parties disagree as to whether a generalized bachelor degree requirement is sufficient to render a position sufficiently specialized to qualify for H-1B status. To this extent, the Court agrees with Defendant and finds the answer to this question well-settled in the case law and USCIS's reasonable interpretations of the regulatory framework. While 8 C.F.R. § 214.2(h)(iii)(A)(1) does not use the language of "specific specialty," USCIS does not abuse its discretion in reading this regulation together with 8 C.F.R. § 214(h)(4)(ii), which defines a "specialty occupation" as one that "requires the attainment of a bachelor's degree or higher in a specific specialty, or its equivalent." *See In re Petitioner [Identifying information redacted by Agency]*, 2013 WL 8124091, \*\*8-11 (Dec. 24, 2013) (explaining that the "regulatory language must be construed in harmony with the thrust of the related provisions and with the statute as a whole"). This latter definition is identical to that provided by the INA itself. *See* 8 U.S.C. § 1184(i)(1). The requirement of a specialized degree, or its equivalent, is also in keeping with the intent of the H-1B visa program, which "allows an employer to reach outside of the U.S. to fill a temporary position because of a special need, presumably one that cannot be easily fulfilled within the U.S." *Caremax*, , 2014 WL 1493621, \*4. Permitting an occupation to qualify simply by requiring a generalized bachelor degree would run contrary to congressional intent to provide a visa program for specialized, as opposed to merely educated, workers. *See Royal Siam Corp.*, 484 F.3d at 147 (providing that an employer should not be able to "ensure the granting of a specialty

occupation visa petition by the simple expedient of creating a generic (and essentially artificial) degree requirement").

That said, the Court agrees with Plaintiff that it has plainly met its burden to show that the position of a "market research analyst" satisfies the first qualifying criterion. The first regulatory criterion requires the agency to examine the generic position requirements of a market research analyst in order to determine whether a specific bachelor's degree or its equivalent is a minimum requirement for entry into the profession. In making this determination, USCIS relied, as is its practice, on the Department of Labor's Occupation Outlook Handbook ("OOH") profile of the market research analyst position. *See Royal Siam Corp.*, 484 F.3d at 1456 ("In its review of petition for nonimmigrant work visas, CIS frequently—and sensibly—consults the occupation descriptions collected in the [OOH]."). The OOH describes the typical training and qualification requirements for a market research analyst, in relevant part, as follows:

> Market research analysts typically need a bachelor's degree in market research or a related field. Many have degrees in fields such as statistics, math, or computer science. Others have a background in business administration, one of the social sciences, or communications. Courses in statistics, research methods, and marketing are essential for these workers; courses in communications and social sciences—such as economics, psychology, and sociology—are also important.

> Many market research analyst jobs require a master's degree. Several schools offer graduate programs in marketing research, but many analysts complete degrees in other fields, such as statistics, marketing, or a Masters of Business Administration (MBA). A master's degree is often required for leadership positions or positions that perform more technical research.

AR at 7. Based on this description, USCIS determined that "although a baccalaureate level of training is typical, the position of a Market Research Analysts is an occupation that <u>does not require</u> a baccalaureate level of education in a <u>specific specialty</u> as a normal, <u>minimum</u> for entry into the occupation." AR at 7-8. This interpretation of the evidence cannot be sustained.

Defendant's approach impermissibly narrows the plain language of the statute. The first regulatory criterion does not restrict qualifying occupations to those for which there exists a single, specifically tailored and titled degree program. Indeed, such an interpretation ignores the statutory and regulatory allowance for occupations that require the attainment of the "equivalent" of specialized bachelor's degree as a threshold for entry. 8 C.F.R. § 214.2(h)(4)(ii); 8 U.S.C. § 1184(i). By including this language, Congress and the INA recognized that the needs of a specialty occupation can be met even where a specifically tailored baccalaureate program is not typically available for a given field. *See Tapis Intern. v. INS*, 94 F.Supp.2d 172, 176 (D. Mass. 2000) (rejecting agency interpretation because it would preclude any position from satisfying the specialty occupation requirements where a specifically tailored degree program is not available). While an agency has considerable leeway to interpret statutes and regulations it enforces, it is not at liberty to read plain language out of a statute. *See Bennett v. Spear*, 520 U.S. 154, 173 ("It is the cardinal principle of statutory construction that it is our duty to give effect, if possible, to every clause and word of a statute rather than to emasculate an entire section.") (internal quotations and alterations omitted).

To this Court's knowledge, the only reviewing court to have considered the "market research analyst" position found that it qualifies under the first H-1B criterion. In *Residential Finance Corp. v. USCIS*, the District Court for the Southern District of Ohio found based on a reading of the OOH profile that a market research analyst "is a distinct occupation with a specialized course of study that includes multiple specialized fields." 839 F.Supp.2d 985, 996 (S.D. Ohio 2012). Explaining that "[d]iplomas rarely come bearing occupation-specific majors," the court determined that the market research analyst position satisfies the regulatory requirement that the occupation demand "highly specialized knowledge and a prospective

employee who has attained the credentialing indicating possession of that knowledge." *Id.* at 997.  Here too, the Court finds that the evidence in the record shows that the proffered position requires as a minimum for entry a specialized degree in "market research," or where no such degree is available, an equivalent technical degree accompanied by relevant coursework in "statistics, research methods, and marketing." The position announcements offered into evidence by Plaintiff corroborate the necessity of a relevant, technical bachelor degree accompanied by specific experience in market research. AR 38-41. The patently specialized nature of the position sets it apart from those that merely require a generic degree. *Cf. Caremax*, 2014 WL 1493621, *4 (affirming USCIS's denial of H-1B petition for a public relations specialist position for which "the OOH makes clear that employers are not particularly concerned with what type of bachelor's an applicant has achieved").

While judicial review of agency decisions is highly deferential, it is not without teeth. Agency action cannot survive judicial review where the agency fails to "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, *v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (internal quotation omitted). The Court finds that Defendants have failed to articulate a satisfactory explanation for the agency's denial based on the record that it had before it. USCIS thus abused its discretion in reaching a decision that was not in accordance with its own interpretation of the statutory and regulatory framework, and its decision shall be reversed. The agency's error, on which its denial of Plaintiff's visa petition was presumed, was not a harmless one. As the agency determined that "[t]he only issue is whether the position offered to the beneficiary qualifies as a specialty occupation," AR at 5, this Court's decision on that issue is dispositive as to the grant of the H-1B visa.

1

**CONCLUSION**

2

For the reasons discussed herein, the Court FINDS that USCIS committed an abuse of

3

discretion by denying Raj's petition for an H-1B visa for Ms. Kajal. Accordingly, the Court

4

hereby GRANTS Plaintiff's Motion for Summary Judgment (Dkt. # 16) and DENIES

5

Defendants' Cross-Motion for Summary Judgment (Dkt. # 19). Defendants are ORDERED to

6

GRANT Plaintiff's Petition for H-1B status.

7

8

Although Plaintiff included a request for attorney's fees in the conclusion of its

9

Motion, it has not demonstrated an entitlement to a fee award. Plaintiff must therefore file a

10

separate motion for attorney's fees within twenty (20) days of the entry of this Order should it

11

wish to pursue a fee award.

12

DATED this 14 day of January 2015.

13

14

15

16

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 11